UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

IN RE:

RONALD BRENT McDOWELL,               CASE NO. 11-30218PNS3

    Debtor.                          Chapter 7

_____

VISION BANK,

    Plaintiff,
v.                                   ADV. PROC. NO.11-03032-WSS

RONALD BRENT McDOWELL,

    Defendant.

## ORDER ON COMPLAINT

    Richard M. Gaal, Counsel for Vision Bank
    Sherry F. Chancellor, Counsel for Ronald Brent McDowell

This matter is before the Court on Vision Bank's complaint to determine the dischargeability of a debt pursuant to §523(a)(2)(A), (a)(4) and (a)(6). The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. At the close of the Plaintiff's evidence, the Defendant moved for a directed verdict on all counts of the complaint. The Court granted the Defendant's motion for directed verdict as to the cause of action under §523(a)(4) for larceny. After due consideration of the pleadings, evidence, testimony and arguments of counsel, the Court makes the following findings of fact and conclusion of law:

## FINDINGS OF FACT

In January 2007, the Debtor executed two notes to the Plaintiff, Vision Bank, with each

1

note being secured by a mortgage on the property being purchased. As further security for each note, the Debtor deposited $100,000 in two separate certificates of deposit, CD #1 and CD #2, for a total of $200,000 in additional security. The Debtor borrowed the money to purchase lots on which to build two spec homes. He previously received a construction loan from Vision Bank to build on a lot that he already owned. The previous project was successful and he made a profit from it.

In the loan documents assigning the CDs to Vision Bank, the Debtor agreed not to sell or otherwise transfer the CD's without written consent from the secured party. In the actual assignment, he agreed that he could not to withdraw all or any part of the collateral. The Debtor testified that he provided the CDs as additional security in order to get construction loans from Vision Bank. However, there was no written agreement from Vision Bank for construction loans for the project.

In August 2007, the Debtor called Jim Hood, a representative of Vision Bank, about releasing $15,000 from each CD. He then met with Hood about the release at the Destin Branch of Vision Bank. Hood agreed to the release of the funds and $30,000 was transferred to the Debtor's checking account with Vision Bank. The Debtor testified that he did not have to sign any documents to get the funds. They were simply transferred to his checking account. In November 2007, the Debtor called Hood and asked him to release the remaining funds in the CDs. Hood authorized an additional $10,000 from each CD or $20,000. The parties stipulated that Hood authorized the release of $50,000 total from the certificates of deposit. This left $150,000 in the CDs securing the two loans. The Debtor made subsequent requests for the release of funds from the CDs, but Hood denied those requests.

The value of the lots securing the Vision Bank loans decreased dramatically and the CDs were important to Vision Bank for security on the loan. The Debtor wrote a letter to Hood's superior, William Lloyd, Jr., stating that Vision Bank should release the funds since it would not give the Debtor the construction loans to build the spec homes.

The Debtor is the owner of Maverick Building Contractors in Florida. He majored in finance at the University of Mississippi and minored in business management. He has been in the construction business for about ten to twelve years. The Debtor testified that he dealt with financing construction projects on a daily basis and understood the concept of collateral securing debt. The Debtor testified that he understood that he had an obligation to maintain the CDs at Vision Bank.

Vision Bank has three branches in the Panhandle of Florida near the Debtor's home: the Destin branch, approximately 10 minutes from the Debtor' home; the Santa Rosa branch, approximately 15 minutes from the Debtor's home and the Panama City branch, approximately 30 minutes from the Debtor's home. On March 3, 2008, the Debtor went to the Panama City branch. He was working on a remodeling job in Seacrest, Florida on that day. The Debtor primarily used the Destin branch, but his practice in banking with Vision Bank was to go to the branch that was closest. At the Panama City branch, the Debtor asked the teller to withdraw the remaining funds from the CDs securing the loans from Vision Bank. He was asked to produce two forms of identification. The teller looked up his account on the computer and conferred with another teller. He was given two cashiers checks for less than $150,000. The difference was the early withdrawal penalty. The Debtor did not tell the teller that Hood had refused to release the funds from the CD to him. He did not call Hood or Lloyd to tell them that he planned to

withdraw the funds. Neither Hood nor his superior Lloyd authorized the release of the funds from the CDs.

The Debtor took the funds and deposited them in an account at another bank, not Vision Bank. He later used the funds to pay down the debt on his home. In his deposition, the Debtor testified that he believed that Jim Hood had lied to him about the construction loans, so he did not trust Hood or Vision Bank and wanted to remove himself from Vision Bank. He stated that he was led to believe that he would be given construction loans for his project. He wanted to move the funds to another bank to get a construction loan for the project.

After obtaining the funds from the CDs, the Debtor continued to make payments on the loans from Vision Bank until Vision Bank filed suit against him based on the withdrawal of the funds from the CD. Vision Bank ultimately foreclosed on the property, and a deficiency judgment was entered against the Debtor in the amount of $495,242.79 plus attorney fees, taxes, and interest on October 27, 2009. The Debtor filed his chapter 7 bankruptcy on June 21, 2011.

## CONCLUSIONS OF LAW

Vision Bank filed this adversary proceeding to determine whether this debt is nondischargeable pursuant to §523(a)(2)(A) as a debt related to false pretenses, false representations or actual fraud, or under §523(a)(6) as a debt resulting from willful and malicious injury by the debtor. Vision Bank alleges that the Debtor obtained the funds by means of fraud or false representations when he failed to inform the bank employees at the Panama City branch that the funds in CDs that were pledged as security for two loans. The Debtor maintains that he had no duty to provide this information to Vision Bank's employees, who had access to this information through the bank's books and records via the computer system. He also asserts that

Vision Bank's reliance on the alleged misrepresentation by the Debtor is not "justifiable" as required by §523(a)(2)(A).

Section 523(a)(2) makes a debt nondischargeable based on three types of conduct: false pretenses, false representations or actual fraud. The court in *In re Gilmore*, 221 B.R. 864, 872 (Bankr. N.D. Ala. 1998) described false representations or actual fraud as active or express conduct or misrepresentation, while false pretenses are "implied misrepresentations or any 'conduct intended to create and foster a false impression.'" (Citation omitted). Of these three categories, the conduct in this case fits best under false pretenses. The court in *Gilmore* described false pretenses as follows:

> The concept of "false pretenses" is especially broad. It includes any intentional fraud or deceit practiced by whatever method in whatever manner. False pretenses "may be implied from conduct or may consist of concealment or non-disclosure where there is a duty to speak, and may consist of any acts, work, symbol or token calculated and intended to deceive." Black's Law Dictionary 602 (6th ed. 1990). It is a "series of events, activities, or communications which, when considered collectively, create a false and misleading set of circumstances, or a false and misleading understanding of a transaction, by which a creditor is wrongfully induced by a debtor to transfer property or extend credit to the debtor." *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996). Silence or concealment as to a material fact can constitute false pretenses. *Bank of Miami v. Quintana (In re Quintana),* 4 B.R. 508, 510 (Bankr. S.D. Fla. 1980). In short, false pretenses "can be made in any of the ways in which ideas can be communicated." *First Nat. Bank of Webster v. Aetna Cas. & Sur. Co.*, 256 F.Supp. 266, 272 (D. Mass. 1966).

*Gilmore*, 221 B.R. at 872.

The testimony showed that the Debtor made no express representations to the Vision Bank representatives. The question in this case is whether the Debtor's conduct, including his silence about the CDs being pledged as security, amounts to false pretenses under §523(a)(2). The first issue is whether the Debtor had a duty to inform Vision Bank's employees that the CDs

were pledged as security for two loans. In the loan documents signed by the Debtor, he agreed not to dispose of the collateral without Vision Bank's written consent. According to the assignment for the CDs, the Debtor agreed that he could not withdraw the funds in the CDs while the agreement was in effect. The Debtor was aware of these requirements because he previously followed the procedures and received part of the funds. He had also been denied funds from the CDs after following the procedure. The Debtor's contractual obligation to leave the CD funds at Vision Bank coupled with his previous experience with having funds released through Jim Hood created a duty on the Debtor's part to inform the Vision Bank employee about the CDs being pledged as security for the loans.

The next issue is whether Vision Bank justifiably relied on the Debtor's silence. Under §523(a)(2)(A), justifiable reliance allows "a plaintiff to rely unequivocally on a representation or promise made by a debtor, without investigating the truth of the representation or promise, unless the statement is patently false." *In re Meyer*, 296 B.R. 849, 862 (Bankr. N.D. Ala. 2003) citing *FCC National Bank v. Gilmore (In re Gilmore)*, 221 B.R. 863, 874 footnote 10 (Bankr. N.D. Ala. 1998); *Field v. Mans*, 516 U.S. 59 (1995); *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995). "Justifiable reliance is determined according to an individual standard, based on the creditor's own abilities and knowledge, or the knowledge that he should have from the facts that are available to him." *In re Wilken*, 377 B.R. 927, 933 (Bankr. M.D. Fla. 2006) citing *Vann*, 67 F.3d at 283. The Debtor asserts that Vision Bank's reliance was not justified given that its employees had complete access to the books and records via the computer system. According to the Debtor, Vision Bank's knowledge was superior to his own in light of its status as a corporation experienced in secured lending transactions. Other than the Debtor's testimony, the Court had no

evidence about how Vision Bank's employees came to release the CD funds even though they had been assigned to Vision Bank as security for loans to the Debtor. There may have been negligence on Vision Bank's part. However, negligence on the creditor's part is not a defense to intentional misrepresentation. *In re Brandon*, 297 B.R. 308, 315 (Bankr. S.D. Ga. 2002). By the Debtor's testimony, Vision Bank's employees checked their records and confirmed his identification before giving the Debtor the funds from the CDs. Under the subjective standard for justifiable reliance, the tellers were not required to investigate further unless the statement was patently false. They determined from their records that the Debtor was entitled to withdraw the funds. However, the Debtor, based on his prior experience with Jim Hood, had the superior knowledge on the day that he withdrew the funds at the Panama City branch. Even though he knew that he had a contractual obligation to leave the funds in Vision Bank, the Debtor did not reveal this material fact to Vision Bank's employees. From the evidence presented, the Court finds that Vision Bank justifiably relied on the Debtor's silence to its detriment.

Having found a duty to reveal material facts and justifiable reliance by Vision Bank on the Debtor's silence about the funds, the Court turns to whether the Debtor obtained the funds under false pretenses. The court in *In re Freedman*, 431 B.R. 245, 256 (Bankr. S.D. Fla. 2010) defined "false pretenses" as

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor . . . A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposefully create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result inadvertence. *Memorial*

*Hospital v. Sarana (In re Sarana)*, 192 B.R. 922, 927-28 (Bankr. N.D. Ill. 1996) (citations omitted).

The facts presented at trial show that the Debtor engaged in a series of communications and activities designed to wrongfully induce Vision Bank to relinquish the funds from the CDs that were pledged as security. First, he went to the Panama City branch to withdraw the funds. The Debtor's assertion that he chose to withdraw the funds from the CDs at the Panama City branch only because it was the closest branch on that day is simply not credible in light of the Debtor's previous dealings with Vision Bank and Jim Hood. He chose that branch because Jim Hood was not there and would not interfere with his plan. He then asked for the funds without revealing that they were pledged as security for the loans from Vision Bank or that Jim Hood previously had refused to release the funds to him. The Court finds that Vision Bank has proven by a preponderance of the evidence[1] that the Debtor obtained the funds by "false pretenses" under §523(a)(2), and that $150,000 of the debt owed by the Debtor to Vision Bank should be held nondischargeable.

Vision Bank also alleged that the debt owed by the Debtor is nondischargeable pursuant to §523(a)(6) as a result of willful and malicious injury. Even if the Court assumed that the Debtor's conduct was willful, Vision Bank failed to show that the Debtor's conduct was malicious under §523(a)(6). "Malicious" under §523(a)(6) is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989), quoting *In re Latch*, 820 F.2d 1163, 1166 n.4 (11th Cir. 1987). The Debtor testified that he needed the funds from the CDs to use as collateral for construction loans to build

---

[1] The standard of proof under 11 U.S.C. §523(a)(2)(A) is a preponderance of the evidence. See *Grogan v. Garner*, 498 U.S. 279 (1991).

on the two lots purchased with the loans from Vision Bank. The collapse of the real estate market made it difficult for the Debtor to get these loans. While his conduct regarding the CDs cannot be excused by financial hardship, the Court finds that the Debtor's conduct was not wrongful or excessive as envisioned by §523(a)(6). Therefore, the Court denies the relief sought by Vision Bank's claim under §523(a)(6).

Based on the foregoing, the Court finds that a portion of the debt owed to Vision Bank in the amount of $150,000 is nondischargeable pursuant to 11 U.S.C.§523(a)(2)(A). The relief sought by Vision Bank under 11 U.S.C. §523(a)(6) is denied. It hereby

**ORDERED** that the relief sought by the Plaintiff's complaint pursuant to 11 U.S.C. §523(a)(2) is **GRANTED**, and a separate, nondischargeable judgement in the amount of ONE HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($150,000.00) plus interest and costs shall be entered in favor of the Plaintiff, Vision Bank, and against the Defendant, Ronald Brent McDowell; and it is further

**ORDERED** that the relief sought by the Plaintiff's complaint pursuant to 11 U.S.C. §523(a)(6) is **DENIED**.

Dated:   May 3, 2012

_/s/ William S. Shulman_
WILLIAM S. SHULMAN
U.S. BANKRUPTCY JUDGE